This is an appeal from the 1985 order of the juvenile division of the circuit court of Mobile County transferring nineteen-year-old John Anthony Cruse for criminal prosecution.
On January 21, 1981, a petition was filed in juvenile court alleging that fourteen-year-old Cruse committed murder, attempted murder, and assault in the first degree. A hearing was held and on May 19, 1981, an order was issued transferring Cruse for criminal prosecution.
That order of transfer was not appealed, and Cruse was indicted and convicted for the murder of Betty Tait. That conviction was affirmed by this Court without opinion in July of 1982. In April of 1983, Cruse filed a petition for writ of error coram nobis in the circuit court. The denial of that petition was affirmed by this Court in Cruse v. State,474 So.2d 106 (Ala.Cr.App. 1984). The Alabama Supreme Court reversed the judgment of this Court because counsel's decision not to appeal the transfer order without Cruse's knowledge, consent, or approval denied Cruse his constitutional right to the effective assistance of counsel. Ex parte Cruse,474 So.2d 109 (Ala. 1985). That court held that the transfer order was inadequate and alone warranted a reversal because the order did not comply with Alabama Code 1975, § 12-15-34 (d), which lists the factors which must be considered before a motion to transfer is granted. The Supreme Court further found that the hearing itself was insufficient because "at the transfer hearing evidence was heard solely concerning the nature of the offense and the involvement of the petitioner" without evidence or consideration of the other factors listed in § 12-15-34 (d).
In August of 1985, in response to the appellate court's order of remand, the juvenile court held a new transfer hearing. On September 6, 1985, the juvenile court entered a written order transferring Cruse for criminal prosecution. This appeal is from that order.
 I
Cruse argues that his second transfer hearing was barred by principles of former jeopardy because the first transfer order had been reversed on appeal because of *Page 696 
insufficient evidence at that first hearing. We find no merit to this contention.
 "[T]aking evidence in a transfer hearing, i.e., a hearing for the purpose of determining whether the juvenile court will retain jurisdiction or waive jurisdiction and transfer the case to the criminal court, does not place a juvenile in jeopardy as long as the hearing cannot result in an adjudication of delinquency. Therefore, the juvenile cannot successfully plead double jeopardy if the case is transferred to criminal court." S. Davis, Rights of Juveniles: The Juvenile Justice System, p. 5-33 (2nd ed. 1984).
"Where a prosecution of a juvenile as an adult for a particular offense followed a juvenile court transfer, waiver, preliminary or detention hearing which related to the same offense, but which did not involve any adjudication as to delinquency, the courts have uniformly held that there was no violation of prohibitions against double jeopardy." Annot., 5 A.L.R.4th 234, 241 (1981). Jeopardy does not attach in a transfer hearing where there was no adjudicatory finding that the juvenile was delinquent or had actually violated a criminal law. Breed v.Jones, 421 U.S. 519, 538, 95 S.Ct. 1779, 1790, 44 L.Ed.2d 346
(1975); Boyd v. State, 341 So.2d 680, 683 (Ala. 1976); Smith v.State, 368 So.2d 298, 301 (Ala.Cr.App. 1978), cert. quashed, Exparte Smith, 368 So.2d 305 (Ala. 1979). However, "[i]f the juvenile court determines that the juvenile has actually violated a criminal law, adjudges the juvenile delinquent and unfit for treatment as a juvenile and transfers him to the Circuit Court for treatment as an adult offender, jeopardy has attached under the doctrine announced in Breed, and the juvenile would be placed in double jeopardy by trial in the Circuit Court." Smith, 368 So.2d at 301.
In the transfer order, the juvenile court found that "probable cause exists for believing that the allegations charged in each case, namely murder, attempted murder, and assault, 1st degree are true and correct, specifically, that said offenses were, in fact, committed, and were committed by John Anthony Cruse." While this portion of the order is somewhat ambiguous as to whether the judge merely made a finding of probable cause or actually concluded that Cruse was guilty as charged, this portion of the order must be read within the context of the entire order. When considered within that context, it is evident that the juvenile court judge was merely making factual and legal findings that there was probable cause to believe that the charged offense was committed by Cruse. The judge never made an actual adjudication of guilt or delinquency but concluded that "transfer for criminal prosecution is appropriate."
In a transfer hearing, "[t]he juvenile court is only authorized to make a finding of probable cause concerning the specific act leading to the delinquency petition before transferring the juvenile for trial in Circuit Court." Smith, 368 So.2d at 301.
"A transfer hearing is held not for the determination of guilt or innocence but is in the nature of a preliminary hearing to determine whether there is probable cause for believing that the allegations are true. * * * Transfer hearings are not held to determine guilt or innocence, but are probable cause hearings." Snow v. State, 423 So.2d 220, 222
(Ala. 1982). See also Whisenant v. State, 466 So.2d 995, 1006
(Ala. 1984); Boyd, 341 So.2d at 683. Nothing in Breed
"forecloses states from requiring, as a prerequisite to the transfer of a juvenile, substantial evidence that he committed the offenses charged, so long as the showing required is not made in an adjudicatory proceeding." Breed v. Jones,421 U.S. at 537, 95 S.Ct. at 1790, n. 18. Because a transfer hearing involves probable cause and not guilt or innocence, "the strict standard of proof beyond a reasonable doubt does not apply.Brown v. State, 353 So.2d 1384 (Ala. 1977). `The only standard which must be met is whether a reasonable man would believe the crime occurred and that the defendant committed it.' Duncan [v.State], 394 So.2d [930] at 932 [Ala. 1981]." Ash v. State,424 So.2d 1381, 1383 (Ala.Cr.App. 1982). *Page 697 
Since jeopardy did not attach in the original transfer hearing, Cruse was not placed in double jeopardy at his second transfer hearing held after the original judgment of transfer had been reversed on appeal.
Cruse argues that under Burks v. United States, 437 U.S. 1,98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), jeopardy attached because the original transfer order was reversed "due to insufficiency of the evidence." In Burks, it was held that the double jeopardy clause bars retrial after the reversal of a conviction on the ground that the evidence presented at the first trial was legally insufficient, because the prosecution failed to develop a case that warranted submission to a jury. Although our Supreme Court, in reversing the transfer order, did find that the evidence warranting transfer was insufficient because "[n]o study or report by Probation Services of the six factors required by Code 1975, § 12-15-34 (d), was offered, or admitted into evidence, or considered by the juvenile court at the hearing," Ex parte Cruse, 474 So.2d 109 (Ala. 1985), the fact remains that jeopardy never attached in the initial transfer hearing as it would in a criminal trial. Burks has no application to a hearing to transfer a juvenile to circuit court for prosecution as an adult because that hearing does not involve an adjudication of guilt or innocence. Where a reviewing court finds that the transfer order is insufficient under § 12-15-34 (d), the proper remedy is to reverse the judgment of the juvenile court and remand the cause for an evidentiary hearing held pursuant to the requirements of § 12-15-34 so that the transferring court, on remand, can "consider evidence of relevant factors not addressed in its former, incorrect order." Ex parte Minor [Ms. 85-72, February 7, 1986] (Ala. 1986). "Upon remand it is incumbent upon the circuit court to consider evidence of all of the statutory factors and to enter an order reflecting that it has considered all of them." Ray v. State, 435 So.2d 53, 54 (Ala. 1983) (Torbert, C.J., concurring specially).
 II
Cruse argues that the "length of delay of four years, six and one-half months" between the dates of the filing of the 1981 motion to transfer and the 1985 motion constitutes a denial of his "Sixth Amendment right to a speedy trial." Appellant's brief, p. 12.
Under the Sixth Amendment to the Constitution of the United States, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." A transfer hearing is not a trial and does not involve a "criminal prosecution." Rather, it is the process by which it is determined whether or not a juvenile will be prosecuted as a criminal and tried as an adult. Since a transfer hearing is not a "criminal prosecution" within the meaning of the constitutional guaranty of the Sixth Amendment right to a speedy trial, that right does not apply to transfer hearings.
 III
It is argued that the evidence presented at the transfer hearing reveals that it was in the best interest of the child and the public for the juvenile court to retain jurisdiction of the juvenile.
In his written order of transfer, the juvenile court judge found:
 "The Court, having considered said evidence, finds as follows:
 "(1) The child was fourteen or more years of age at the time of the conduct charged, and is alleged to have committed an act which would constitute a felony if committed by an adult, as to each act charged in each case.
 "(2) The Court finds no reasonable grounds to believe the child is committable to an institution or agency for the mentally retarded or mentally ill, neither as of the time of the present transfer hearing nor as of the time of the 1981 transfer hearing.
 "(3) The Court finds that probable cause exists for believing that the allegations charged in each case, namely murder, attempted murder, and assault, 1st *Page 698 
degree are true and correct, specifically, that said offenses were, in fact, committed, and were committed by John Anthony Cruse.
 "With regard to the factors required to be considered under § 12-15-34 (d), Code of Alabama (1975), upon consideration of the evidence the Court makes the following findings of such factors:
"(1) The nature of the present alleged offense.
 "The offenses alleged are murder, attempted murder, and assault, first degree, Class A and Class B felonies if committed by an adult. Each case involved the use by the child of a deadly weapon, a shotgun, upon essentially defenseless victims, one of whom was at the time of the attack lying in her bed totally helpless to resist and indeed totally unsuspecting of the attack. There is probable cause to believe that the child engaged in a deliberate, coordinated effort to murder or maim human beings in one transaction, utilizing a particularly lethal weapon, and evidencing a conscience devoid of moral restraint. This is conduct that the Court finds to be particularly grave when considered in comparison with other murders, attempted murders, and first degree assaults.
 "(2) The extent and nature of the child's prior delinquency record.
 "As of the 1981 transfer hearing, the child had no delinquency record prior to the alleged offenses.
 "(3) The nature of past treatment efforts and the nature of the child's response to such efforts.
"No treatment efforts were provided, the child being
unknown to the Juvenile Court.
"(4) Demeanor.
 "As of the 1981 transfer hearing, the child had attempted to escape from his pre-trial confinement in the Mobile County Youth Center by digging under his window with a nail. As of that time, the psychological report reflected that the child was `functioning in the superior range of intelligence', and that he had `disregard for social values, low impulse control, limited frustration tolerance, and acting out potential.' The psychological examiner further noted in the 1981 report that `Capacity for guilt and remorse seems very limited. Judgment and insight are equally limited.' The psychological evaluation ordered by the Court for this transfer hearing is essentially corroborative, as of the present time, of the 1981 observations.
 "The Court specifically does not consider the disciplinary record of the child in jail or the State Penitentiary following his original transfer for criminal prosecution in 1981, nor does the Court consider any other aspects of Paragraph Number Three of the Probation Officer's 1985 report, relating to the child's demeanor and whereabouts following the original transfer hearing.
 "The testimony of Dr. Dan Koch, clinical psychologist who testified for the child, is in many respects consistent with, and corroborative of, the above-noted Court-ordered psychological examinations of 1981 and 1985. The Court is not bound by Dr. Koch's expressed opinions that it is inappropriate to confine the child in a penal facility, and notes Dr. Koch's further expressed opinion that `no fourteen year old' should ever be so confined. These opinions, and Dr. Koch's opinions concerning the child's potential for rehabilitation and likelihood of repetition of criminal acts, are outweighed by the other psychological evidence. Dr. Koch did note that the 1981 and 1985 findings of Dr. Kothandapani, set out above, are consistent with his own findings. Put another way, there is sufficient psychological evidence that the child's demeanor both in 1981 and in 1985 is appropriate for transfer for criminal prosecution, and the Court so finds.
 "(5) The extent and nature of the child's physical and mental maturity.
 "In 1981, the child was physically mature for his age. He is physically mature for his age at this time. Although in both 1981 and 1985 some degree of emotional *Page 699 
immaturity was noted, the child was in 1981, and is in 1985, functioning intellectually in the top 3% of the general population, and there is evidence that both then and now he functioned and does function at a level of mental maturity reasonable for his age. The Court finds both in 1981 and in 1985 the child's physical and mental maturity to be appropriate for transfer for criminal prosecution.
 "(6) The interests of the community and of the child requiring that the child be placed under legal restraint or discipline.
 "The Court finds that the resources presently available to the Juvenile Court do not appear appropriate for dealing with the child based on the nature of the alleged offenses; the child's demeanor; the child's physical and mental maturity; and the other evidence considered by the Court. The Court makes the same finding based upon the same factors as applied to the situation as it existed at the time of the 1981 transfer hearing. The Court finds that, as of the time of the 1981 transfer hearing, it was in the best interests of the child and the community that the child be transferred for criminal prosecution as an adult. The Court makes the same finding as of the time of the present transfer hearing.
 "In making its determination, the Court has, as required by § 12-15-34 (d), considered all `other relevant factors' disclosed by the evidence, in addition to the specific factors enumerated in § 12-15-34 (d).
 "In order to make its ruling explicit, the Court has considered all factors required by § 12-15-34, as set out above, based upon the facts and circumstances as they existed with regard to the child in 1981 at the time of the original transfer hearing. The Court finds that transfer for criminal prosecution is appropriate under those facts and circumstances. The Court has separately considered all factors required by § 12-15-34, as set out above, based upon the facts and circumstances as they existed with regard to the child at the time of the present transfer hearing, although in this determination the Court did not consider certain facts which it has noted. The Court finds that transfer for criminal prosecution is appropriate under this separate set of facts and circumstances.
 "The Court does, therefore, ORDER that Cases Numbered JU-81-51.01, JU-81-51.02, and JU-81-51.03, be transferred to the Circuit Court for the Thirteenth Judicial Circuit of Alabama, for criminal prosecution as an adult."
These findings are supported by the record.
"Transfer hearings are `probable cause' hearings, and the transferring court should not be reversed unless clearly erroneous." Bragg v. State, 416 So.2d 715, 716 (Ala. 1982). "The mere recital in the transfer order, that the trial court has considered the six statutory factors [outlined in § 12-15-34 (d)] is sufficient, Brown v. State, 353 So.2d 1384
(Ala. 1977), where there is evidence to support the order."Bragg, 416 So.2d at 717. An appellate court will not interfere with a juvenile court's order of transfer unless that order is "clearly erroneous." Williams v. State, 361 So.2d 1157 (Ala. 1978).
 "In reviewing an order transferring a juvenile to the circuit court for criminal prosecution as an adult, this Court is limited to considering whether the juvenile court abused its discretion considering the totality of the circumstances involved. `In reviewing the record, this court has held that it will not interfere with a lower court's order transferring a juvenile to circuit court unless that order is clearly erroneous.' Mayne v. State, 416 So.2d 741, 742 (Ala. 1982). `The question involved on such review is not whether the reviewing court would reach a different conclusion, but whether the decision reviewed has a rational basis and is not arbitrary or capricious.' 43 C.J.S. Infants Section 49 (b). Neither this Court nor our Supreme Court will interfere with the transfer order of the juvenile court unless it is `clearly erroneous.' Williams v. State, 361 So.2d 1157 (Ala. 1978)." Whisenant v. State, *Page 700 466 So.2d 995, 998 (Ala.Cr.App. 1984), reversed on other grounds, Ex parte Whisenant, 466 So.2d 1006 (Ala. 1985).
Our review convinces us that the juvenile court judge made a conscientious and comprehensive determination that the juvenile should be transferred to the circuit court for criminal prosecution as an adult after considering and weighing each and every factor listed in § 12-15-34 (d). His findings are supported by the record and are due to be affirmed by this Court.
Affirmed.
All Judges concur.